STATE of Minnesota, Respondent,

v.

Timothy Joseph HOFMANN, Appellant.

No. C5–95–1732.

Court of Appeals of Minnesota.

June 4, 1996.

Review Denied Aug. 6, 1996.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Asst. Atty. Gen., Todd P. Zettler, Certified Student Atty., St. Paul, Norman J. Loren, Kanabec County Atty., Mora, for Respondent.

John M. Stuart, State Public Defender, Scott G. Swanson, Asst. Public Defender, Geoffrey Isaacman, Certified Student Atty., Minneapolis, for Appellant.

Considered and decided by DAVIES, P.J., and HARTEN and WILLIS, JJ.

## OPINION

HARTEN, Judge.

After a bench trial, appellant Timothy Joseph Hofmann was convicted of second-degree burglary, theft, and first-degree criminal damage to property. Hofmann now challenges those convictions, claiming that the victims' burglarized motor home was not a "building" within the meaning of the burglary statute and that the trial court erred in admitting for impeachment purposes evidence of his prior convictions. We affirm.

## ISSUES

1. Was the motor home a "building" for purposes of the burglary statute?

2. Did the trial court commit reversible error in admitting for impeachment purposes evidence of Hofmann's prior convictions?

## ANALYSIS

1. Hofmann was convicted of burglary under Minn.Stat. § 609.582, subd. 2(a) (1992), which provides:

Whoever enters a building without consent and with intent to commit a crime, or enters a building without consent and com-

mits a crime while in the building, commits burglary in the second degree * * * if: (a) the building is a dwelling * * *.

Hofmann argues that we should overturn his burglary conviction because the victims' motor home did not constitute a "building" within the meaning of the statute.

■ "A burglary conviction can be sustained only if the building involved is within the statutory definition." *In re Welfare of R.O.H.*, 444 N.W.2d 294, 294 (Minn.App. 1989). "[I]n applying the burglary statute one must look not to the dictionary definition of 'building' but rather to the statutory definition." *State v. Vredenberg*, 264 N.W.2d 406, 407 (Minn.1978). The statutory definition is as follows:

> "Building" means a structure suitable for affording shelter for human beings including any appurtenant or connected structure.

Minn.Stat. § 609.581, subd. 2 (1992).

■ The statutory definition includes the motor home at issue here. The motor home was a converted full-length bus, in which the victims, a married couple, resided full-time (although they maintained a mailing address in North Dakota). The motor home contained appliances, a safe, and "all of [the victims'] belongings." The victims' use of the motor home demonstrated that it was "suitable for affording shelter for human beings."

Nonetheless, Hofmann argues that the motor home should not have been considered a building for purposes of the burglary statute because it was not a "permanent" structure. We reject this argument. As noted above, the statutory definition controls, which, by its terms, does not require permanence. The supreme court has stated that

> the sole test of whether a structure is a "building" is whether the structure is "suitable for affording shelter for human beings."

*State v. Bronson*, 259 N.W.2d 465, 466 (Minn. 1977). Minnesota's appellate courts have ap-

plied this test consistently in determining whether various structures fall within the burglary statute. *See State v. Walker*, 319 N.W.2d 414, 417 (Minn.1982) (structure attached to a barn was a "building" because owner took shelter in the barn while performing chores); *Bronson*, 259 N.W.2d at 465–66 (basketball arena being converted to an ice arena and with one wall knocked out retained its character as a "building" because it provided shelter for people working in it); *State v. Gerou*, 283 Minn. 298, 302, 168 N.W.2d 15, 17 (1969) (warehouse that provided shelter for people working there was a "building"); *State ex rel. Webber v. Tahash*, 277 Minn. 302, 306–07, 152 N.W.2d 497, 501 (1967) (tool shed not suitable for human shelter was not a "building"); *R.O.H.*, 444 N.W.2d at 295 (mini-storage unit that provided shelter from the elements was a "building").

All of the cited cases involve fixed structures (although the structure in *Bronson* was under construction). The case closest to the instant case is *Vredenberg*, in which the supreme court held that three houseboat cabins constituted "buildings" under the burglary statute. 264 N.W.2d at 407. The court noted that boats were specifically included in the pre–1963 statutory definition wherein "building" was defined as

> every house, vessel, railway car, tent, shop, or other structure suitable for affording shelter for human beings, or appurtenant to or connected with a structure so adapted.

*Id.* (citing Minn.Stat. § 621.01, subd. 4 (1961)) (emphasis omitted).[1]

Hofmann asserts that the *Vredenberg* court would have reached a different result for motor homes because while such moveable structures as railway cars and vessels were explicitly named in the pre–1963 burglary statute, motor homes were not. We disagree. In *Vredenberg*, the supreme court considered the statute's evolution in rejecting the defendant's argument that the legislature intended to exclude boats in amending the

---

1. The definition was amended in 1963 to state: " 'Building' includes a dwelling or other structure suitable for affording shelter for human beings or appurtenant to or connected with a structure so adapted, and includes portions of such structure as are separately occupied." Minn. Stat. § 609.58, subd. 1(2) (1982). The current definition, which does not require that the structure be a dwelling, was enacted in 1983. 1983 Minn. Laws ch. 321, § 1.

definition of "building." *Id.* The court ruled that a boat could still be "building" under the amended statute because the legislature intended only to streamline the definition and did not intend to change the substantive law as to the scope of the burglary statute. *Id.* (citing *Gerou,* 283 Minn. at 302, 168 N.W.2d at 17). In the end, the court applied the same test as it had in the cases involving fixed structures:

> The test of what is a "building" is the same under the revised statute as it was under the old statute: Is the structure suitable for human shelter?

*Id.*

■ Thus, controlling precedent requires adherence to the statutory definition of "building" in applying the burglary statute, whether or not a fixed structure is involved. We hold that the motor home was a building under sections 609.581 and 609.582.

2. Hofmann also argues that the trial court erred in admitting evidence of his past convictions for credibility impeachment purposes. Before trial, the court denied Hofmann's motion to suppress evidence of seven convictions: receiving stolen property, 1994; theft, 1992; attempted first-degree burglary, 1991; attempted receiving stolen property, 1990; theft, 1988; unauthorized use of a motor vehicle, 1987; and second-degree burglary, 1983.

■ Impeachment by evidence of prior conviction is governed by rule 609:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, or (2) involved dishonesty or false statement, regardless of the punishment.

Minn.R.Evid. 609(a). A trial court's evidentiary ruling under this rule must be sustained unless a clear abuse of discretion is shown. *State v. Brouillette,* 286 N.W.2d 702, 707 (Minn.1979).

■ Hofmann correctly notes that the evidence was inadmissible under rule 609(a)(2) as evidence of crimes involving dishonesty or false statement. Burglary is not such a crime. *State v. Ross,* 491 N.W.2d 658, 660 (Minn.1992). Whether other crimes against property are crimes of dishonesty under rule 609 depends on the manner in which the particular offenses were committed; for example, swindle would involve dishonesty or false statement, while simple shoplifting would not necessarily meet the dishonesty standard. *State v. Sims,* 526 N.W.2d 201, 202 (Minn.1994). Here, the circumstances surrounding Hofmann's past convictions were not furnished to the trial court and are absent from the record.

Nevertheless, we hold that the trial court's admission of evidence of Hofmann's six most recent convictions was proper under rule 609(a)(1). *See State v. Gassler,* 505 N.W.2d 62, 66 (Minn.1993) (upholding admission of prior convictions under rule 609(a)(1) even though trial court did not specify which part of rule 609(a) applied).

■ Impeachment by a prior conviction allows the factfinder "to judge better the credibility of a witness by affording it the opportunity to view that person as a whole." *State v. Lloyd,* 345 N.W.2d 240, 247 (Minn. 1984). The need for such evidence is balanced against the concern that the defendant may be deterred from testifying by its admission. *Vaughn v. Love,* 347 N.W.2d 818, 821 (Minn.App.1984), *review denied* (Minn. July 26, 1984). In determining whether the probative value of a prior conviction outweighs its prejudicial effect, we consider the following factors:

> (1) the impeachment value of the prior conviction; (2) the date of the conviction and the defendant's subsequent history; (3) the similarity of the past crime with the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue.

*Gassler,* 505 N.W.2d at 66 (citing *State v. Jones,* 271 N.W.2d 534, 537–38 (Minn.1978)).

■ The *Jones* test is satisfied here. Hofmann's numerous past convictions are recent and regular; there is no concern about undue

prejudice resulting from an isolated incident. Hofmann was not deterred from testifying. The past convictions were somewhat similar to the charged crimes, but the possibility of any unfair prejudice was diminished by the fact that the case was tried to a judge without a jury.

Moreover, Hofmann's credibility was an important consideration. A witness testified that he saw Hofmann late at night looking around the yard where the victims' motor home was parked, and Hofmann was arrested while in possession of checks and documents missing from the motor home. Hofmann testified that he had been in the yard looking for a part with which to fix another man's truck. Hofmann denied entering the motor home, but he conceded that he later received the checks and documents from the other man, insisting that he did not know their origin. Because Hofmann's story could not be disproved by the other evidence, his credibility became a key factor.

 Nevertheless, we conclude that evidence of the 1983 second-degree burglary conviction should not have been admitted.[2] Under rule 609(b),

> [e]vidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction *supported by specific facts and circumstances* substantially outweighs its prejudicial effect.

Minn.R.Evid. 609(b) (emphasis added). This ten-year limit applies to the burglary conviction, which occurred more than 11 years before trial of the instant case (imposition of the sentence was stayed, so the ten-year limit is measured from the date of conviction). Because the specific facts and circumstances of the crime were not shown, evi-

dence of that conviction was not properly admissible under rule 609. Nonetheless, we believe that the erroneous admission of this one conviction was harmless error, given proper admission of evidence of the other six convictions.

### DECISION

The victims' motor home was a "building" within the meaning of the burglary statute because it was suitable for affording shelter for human beings. The trial court did not abuse its discretion in admitting for impeachment purposes evidence of Hofmann's six most recent convictions. The trial court erred in admitting evidence of Hofmann's 1983 conviction, but such error was harmless.

**Affirmed.**

---

2. Hofmann argues that evidence of this conviction could not come in under rule 609(a)(1) because it had been reduced to a misdemeanor by stay of imposition. Hofmann is incorrect. A crime that is punishable by imprisonment for over one year (as was this one) is within the scope of this rule even if the conviction is reduced to a misdemeanor under Minn.Stat. § 609.13. *State v. Skramstad,* 433 N.W.2d 449, 452–53 (Minn.App.1988), *review denied* (Minn. Mar. 13, 1989).